IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JUAN SANTANA, # R-59214, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-cv-1229-JPG |
| | ) | |
| K. KEMPFER, R. HARRINGTON, | ) | |
| T. VEATH, J. HART, | ) | |
| SGT. SCHURTZ, SGT. PELKER, | ) | |
| and UNKNOWN PARTIES, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a life sentence for murder as well as a 30-year sentence for arson. Plaintiff claims that Defendants held him in two segregation cells that were unfit for habitation, and that he was denied due process protections in a disciplinary hearing.

Plaintiff's complaint explains that on August 21, 2013, he was transferred from Stateville Correctional Center to Menard, and was held "under investigation in punitive segregation" in cell number 407, wing N-2, for the first month of his stay (Doc. 1, pp. 6, 8). The cell was filthy and had an overwhelming odor of urine and mold; the walls were moldy and the floor was covered with paint chips that had peeled off the walls. Plaintiff's mattress had huge yellow stains that smelled like urine and mold. The temperatures were in the 90-100 degree range and the cell had a steel mesh door, making it excessively hot. A large and very loud industrial fan was in operation around the clock near Plaintiff's cell, making it nearly impossible to sleep and

providing little relief from the heat (Doc. 1, pp. 6-7).

Plaintiff asked several John Doe Correctional Officers for cleaning supplies, a new mattress and/or linens to cover the filthy mattress, and hygiene supplies. Despite these requests, Plaintiff spent the first nine days in the cell without any soap, toilet tissue, toothpaste, shampoo, deodorant, or his fan. He was forced to use two socks instead of toilet paper and had no soap to wash them out. Plaintiff developed vomiting, headaches, insomnia, ringing in his ears, and an itching skin rash because of these conditions. Although he received some personal hygiene items and his fan after nine days, it appears that he was never provided with any linens or cleaning supplies for the cell, nor was the mattress replaced. He wrote several requests to be seen during sick call, and asked several John Doe Officers to help him get medical attention, but never received a medical visit for the 30 days he was in this cell (Doc. 1, p. 7).

On September 20, 2013, Plaintiff appeared before the adjustment committee (Defendants Veath and Hart) for a hearing on a disciplinary charge that Plaintiff was a member of a security threat group (Doc. 1, pp. 8, 13). Plaintiff maintained he was not a gang member, attempted to present a written statement in his defense, and requested two witnesses. However, Defendant Veath did not call Plaintiff's witnesses and refused to accept his written statement. Before the hearing ended, Plaintiff asked Defendant Veath to help him correct the conditions in his cell, and to help him get medical care; both requests were refused.

Relying on the statement of an officer and two confidential informants, Defendants Veath and Hart found Plaintiff guilty of the charge. Defendant Harrington approved their findings. He was punished with three months in segregation, among other sanctions (Doc. 1, p. 13). Plaintiff was moved to cell number 639 in wing N-2 on September 21, 2013. This cell was in worse condition than the first cell, and Plaintiff had to share the 40-square-foot space with another

inmate. The walls appeared to be smeared with dried blood and feces, were moldy, and the paint was peeling (Doc. 1, p. 9). Plaintiff's mattress was stained and smelled of urine. The toilet was filthy and caked with waste.

On September 25, Plaintiff asked Defendant Kempfer for a new mattress, cleaning supplies, and linen; he responded with profanity and did nothing to help. On October 9, 2013, Plaintiff repeated these requests to Defendant Schurtz, who told him to ask the gallery officer. Plaintiff had already done this; Defendant Schurtz did nothing further. On November 1, 2013, Plaintiff asked Defendant Pelker for the same items but was ignored (Doc. 1, pp. 10). Later that day, Plaintiff asked a different officer (Wenzell, who is not a Defendant) for help; he responded by getting Plaintiff sheets and a blanket. Plaintiff filed three emergency grievances over the conditions, directed to Defendant Warden Harrington, but never got any response.

During his time in the second segregation cell, Plaintiff's health problems continued and grew worse. Plaintiff was finally seen by a nurse on November 14, 2013, and was given ointment for his rash, and Tylenol (Doc. 1, p. 9).

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages (Doc. 1, p. 11).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims, which shall receive further review:

**Count 1:** Eighth Amendment claim against the Unknown Party (John Doe) Correctional

Officers who worked on N-2 segregation, 4 Gallery between August 21 and September 21, 2013, for subjecting Plaintiff to unsanitary cell conditions in Cell No. 407 and denying his requests for personal hygiene supplies;

**Count 2:** Eighth Amendment claim against the Unknown Party (John Doe) Correctional Officers who worked on N-2 segregation, 4 Gallery between August 21 and September 21, 2013, for refusing Plaintiff's requests for assistance in obtaining medical care;[1]

**Count 3:** Against Defendants Veath and Hart, for deprivation of a liberty interest without due process, in that their failure to allow Plaintiff to present a defense or call witnesses in his disciplinary hearing led to his confinement for 90 days in segregation under deplorable conditions;

**Count 4:** Eighth Amendment claim against Defendants Kempfer, Shurtz, and Pelker for failing to remedy the unsanitary cell conditions in Cell No. 639, N-2 wing.

**Dismissal of Count 5- Claims Against Defendant Harrington**

Plaintiff fails to state any substantive claim against Defendant Harrington for the violation of his constitutional rights. Plaintiff's allegations indicate that Defendant Harrington gave administrative approval to his punishment with three months in punitive segregation after the flawed disciplinary hearing. However, Defendant Harrington did not conduct the hearing, nor was he personally involved in the alleged denial of Plaintiff's procedural due process protections. Liability in a civil rights action will not attach unless a defendant had direct,

---

[1] Plaintiff does not state a claim against Defendant Veath for failing to intervene to help Plaintiff obtain medical care, or to remedy the cell conditions in cell number 407. The complaint does not suggest that Defendant Veath had any responsibility for the condition of Plaintiff's first segregation cell. Further, he did not have a duty to come to Plaintiff's rescue merely because Plaintiff asked for help during the disciplinary hearing. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (officials can be held responsible only for their own misdeeds; mere knowledge of an alleged constitutional violation by another party does not create liability).

personal involvement in the deprivation of a constitutional right. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Further, a warden cannot be held liable merely because he was the supervisor of the prison employee who violated an inmate's constitutional rights – the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Id.*

Likewise, Defendant Harrington does not incur liability for failing to respond to Plaintiff's grievances. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011).

For these reasons, Count 5 against Defendant Harrington shall be dismissed with prejudice. However, Defendant Harrington shall remain as a party to the action, both to respond to discovery requests and for the purpose of carrying out any injunctive relief to which Plaintiff may be entitled. *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Pending Motions**

Plaintiff filed a motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2), but included only part of the required six months of his prison trust fund account records. He has been ordered to submit the remaining documentation no later than January 10, 2014 (Doc. 5). The Court must review the full six months of records in order to determine whether Plaintiff is entitled to proceed IFP, and if so, the amount of his initial partial filing fee. Accordingly, the motion for leave to proceed IFP shall be held in abeyance pending Plaintiff's compliance with the order at Doc. 5. If Plaintiff's records are not timely submitted, this action shall be subject to dismissal for failure to comply with an order of this Court. *See* FED. R. CIV. P. 41(b).

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNT 5** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **KEMPFER, HARRINGTON, VEATH, HART, SCHURTZ,** and **PELKER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 18, 2013**

*s/ J. Phil Gilbert*
United States District Judge